# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SEAN DOYLE et al., | |
| Plaintiffs, | Case No.: 3:24-cv-12030-MGM |
| v. | |
| FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC., | |
| Defendant. | |

# FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 3

I.      THE *ROY* AND *CLAIBORNE* ACTIONS........................................................ 3

        A.      The *Roy* Action Was Riddled with Serious Discovery Issues ................ 4

        B.      The Court Decertified the Collective ....................................................... 6

II.     THE *DOYLE* ACTION .................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.      LLR HAS VIOLATED RULE 11(b)(1) ........................................................... 9

        A.      There Is No Indication These Are Valid Plaintiffs ................................ 10

        B.      LLR Knows It Cannot Get Each Plaintiff to Participate in this Case As
                Plaintiffs Are Required to Do ................................................................ 13

II.     LLR HAS VIOLATED RULE 11(b)(2)-(3) .................................................... 17

        A.      LLR Has Not Alleged Accurate Facts for Many of the Plaintiffs' Claims........... 17

        B.      LLR Has Not Requested Pay Documents from Plaintiffs' Employers................ 19

III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AND LLR SHOULD
        BE REQUIRED TO CONDUCT A REASONABLE INQUIRY INTO EACH
        PLAINTIFF'S CLAIMS BEFORE REFILING ............................................. 21

CONCLUSION........................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Abner v. Federal Express*,
  No. 2:24-cv-01129-RJC (W.D. Pa.) ....................................................... 1

*Alleyne v. Federal Express*,
  No. 3:24-cv-12031-KAR (D. Mass.) ................................................ 1, 19

*Azubuko v. MBNA Am. Bank*,
  396 F. Supp. 2d 1 (D. Mass. 2005) ...................................................... 21

*Brannon v. Federal Express*,
  No. 2:24-cv-01128-RJC (W.D. Pa.) ....................................................... 1

*Brown v. M/I Homes of Orlando, LLC*,
  No. 608-CV-528-ORL-28KRS, 2008 WL 5099695
  (M.D. Fla. Nov. 26, 2008) .................................................................... 19

*Del Giudice v. S.A.C. Cap. Mgmt., LLC*,
  No. CIV. A. 06-1413 SRC, 2009 WL 424368
  (D.N.J. Feb. 19, 2009) .......................................................................... 22

*Est. of Hennis v. Balicki*,
  No. CV 16-4216 (JBS-AMD), 2018 WL 2230543
  (D.N.J. May 16, 2018) .......................................................................... 21

*Estrada v. FTS USA, LLC*,
  No. 14-23388-CIV, 2018 WL 1836007
  (S.D. Fla. Jan. 23, 2018),
  *r. & r. adopted*, No. 14-CV-23388, 2018 WL 1811907
  (S.D. Fla. Mar. 16, 2018),
  *aff'd*, 810 F. App'x 743 (11th Cir. 2020) .............................................. 20

*Galanis v. Szulik*,
  841 F. Supp. 2d 456 (D. Mass. 2011) ................................................... 18

*In re Engle Cases*,
  283 F. Supp. 3d 1174 (M.D. Fla. 2017) ............................ 1, 8, 10, 15, 16, 17, 18, 19, 22, 23

*In re Engle Cases*,
  767 F.3d 1082 (11th Cir. 2014) ............................................... 12, 16, 22

*Jimenez v. Madison Area Tech. Coll.*,
  321 F.3d 652 (7th Cir. 2003) ............................................................... 22

*Leavitt v. United Servs. Auto. Ass'n,*
No. 4:23-CV-11341-IT, 2024 WL 218504
(D. Mass. Jan. 19, 2024) ................................................................... 10, 17

*Marina Mgmt. Servs., Inc. v. Vessel My Girls,*
202 F.3d 315 (D.C. Cir. 2000) ............................................................... 21

*Miller v. Bridgeport Bd. of Educ.,*
No. 3:12-CV-01287 JAM, 2014 WL 3738057
(D. Conn. July 30, 2014) ........................................................................ 22

*Roger Edwards, LLC v. Fiddes & Son Ltd.,*
437 F.3d 140 (1st Cir. 2006) ................................................................... 8

**RULES**

Fed. R. Civ. P. 11 ......................................................................... 1, 9, 15

LR 40.1 ................................................................................................. 3

Lichten & Liss-Riordan, P.C. ("LLR") certified to the best of its "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the claims in this case were "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the claims in the original and amended complaints were "warranted by existing law" and have, or will have, sufficient "evidentiary support." *See* Fed. R. Civ. P. 11(b). Contrary to that certification, LLR failed to conduct any inquiry, let alone a reasonable one, before filing this case naming 38 Plaintiffs. LLR did the same in several other cases it filed against FedEx on the same day as this one, totaling over 12,000 individual plaintiffs between the four mass action cases for whom LLR did not meet their Rule 11 obligations. *See Alleyne v. Federal Express*, No. 3:24-cv-12031-KAR (D. Mass.) (145 Plaintiffs); *Abner v. Federal Express*, No. 2:24-cv-01129-RJC (W.D. Pa.) (11,643 Plaintiffs); *Brannon v. Federal Express*, No. 2:24-cv-01128-RJC (W.D. Pa.) (385 Plaintiffs).[1]

"Rule 11 imposes the same obligations on a lawyer regardless of whether he files one complaint or 10,000 complaints" and "[t]he solution to managing these types of mass actions is surely not that the standard of care diminishes as the number of cases grows." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1221 (M.D. Fla. 2017) (emphasis omitted). Yet, by filing this case, particularly in light of the three other mass actions LLR has filed, LLR has violated Rule 11 in several ways.

First, LLR's amended complaint violates Rule 11(b)(1) for two independent reasons. The first is that LLR cannot show that these 38 Plaintiffs are <u>real</u> Plaintiffs. Before filing this case, LLR was litigating the conditionally-certified *Roy* action of approximately 550 opt-ins. The Court determined that the Plaintiffs had not "identified reliable common or representative

---

[1] FedEx will be filing Rule 11 motions in these cases as well.

evidence of an FLSA violation." (*Roy*, ECF No. 408 at 16.) After the Court decertified the collective, LLR asked for additional tolling of 120 days. Rather than using that time to investigate the claims of the former opt-ins and determine whether they could pursue their claims individually, LLR simply sued on behalf of as many of the opt-ins from *Roy*, as well as the *Claiborne* case (discussed below), they could muster with a simplistic, misleading electronic outreach.

LLR did not bother to communicate to these former opt-ins the significant differences between pursuing a case individually and joining a collective. Unlike before, where most of these Plaintiffs were only limited participants—they are now expected to fully participate in discovery, including sitting for depositions, and risking exposure to cost awards. Because LLR didn't communicate these differences, it didn't get informed consent from the Plaintiffs to change their status and proceed with the present lawsuit.

The lack of informed consent leads to the second way in which LLR violated Rule 11(b)(1): there is no reason to believe that LLR will be able to marshal the extensive discovery necessary in this case. Over the course of <u>five</u> years in *Roy*, LLR was unable to meet discovery obligations not only for the 50 discovery opt-ins, the two named Plaintiffs, and deposed opt-ins (some of which are now Plaintiffs in this case), as admitted to the *Claiborne* court, No. 2:18-cv-01698-RJC (W.D. Pa.), many times. According to LLR, this problem wasn't just a matter of capacity. It represented to the *Claiborne* court that obtaining discovery from the opt-ins would take years because many of them would rather <u>drop out of the case entirely</u> than engage in the discovery process (even as limited as it was for opt-ins). When addressing this issue with the *Claiborne* court, LLR used the *Roy* case with just 50 discovery opt-ins to demonstrate the significant struggles it had obtaining discovery just from that small number. Despite these

representations, LLR has moved forward with a complaint naming 38 individuals here, in addition to the three other complaints for 12,000 plaintiffs, knowing full well it will not be able to ensure the required Plaintiff-level participation from them. In fact, LLR knows full well that many of these 38 Plaintiffs did not meet even the limited discovery participation required of them as opt-ins in the *Roy* case. The reason for this strategy is clear—LLR wanted to increase the costs of litigation and harass FedEx into settlement.

Second, LLR's amended complaint violates Rule 11(b)(2)-(3). LLR has alleged inaccurate facts for many Plaintiffs despite having evidence readily available to it, has included a Plaintiff in this complaint who is also a Plaintiff named in the *Alleyne* action, and has not requested the Plaintiffs' pay documents from their employers, the Service Providers. FedEx should not be required to respond to a complaint that is indisputably in violation of Rule 11.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE *ROY* AND *CLAIBORNE* ACTIONS

In 2017, LLR filed an FLSA action against FedEx in this court, *Roy v. FedEx Ground Package System, Inc.*, No. 3:17-cv-30116-KAR (D. Mass.) ("*Roy*").[2] Magistrate Judge Robertson conditionally certified the collective of Massachusetts drivers on November 27, 2018, resulting in approximately 550 individuals opting into the case. (*See id.*, ECF No. 64.)

---

[2] FedEx notes that this case, *Doyle*, is pending in the Springfield Division based on Plaintiffs' designation that *Doyle* is related to *Roy*. (*See* Compl., ECF No. 1.) By filing this motion, FedEx does not concede relatedness and maintains that this action neither involves the same or substantially similar issues of fact nor grows out of the same occurrence or transaction as the *Roy* action. *See* LR 40.1(g). FedEx will be filing (or may have already filed by the filing of this motion) its opposition to the designation of relatedness, pursuant to LR 40.1(g)(6).

### A.    The *Roy* Action Was Riddled with Serious Discovery Issues

In December 2019, the Court held that FedEx was entitled to seek written discovery, in the form of questionnaires, from 50 opt-ins FedEx chose. (*Id.*, ECF No. 118.) Throughout the next four years, up until Magistrate Judge Robertson granted FedEx's motion to decertify the collective, the *Roy* litigation was riddled with discovery difficulties. Pursuant to the parties' agreed-to rolling schedule, in February 2020, FedEx sent questionnaires for an initial nine opt-ins. (Ex. A, J. Scott Decl. ¶ 4.) Four of those nine opted out or were dismissed from the case. (*Id.*) In May 2020, FedEx sent 13 questionnaires. (*Id.* ¶  5.) Seven of those opt-ins were ultimately dismissed from the case. (*Id.*) FedEx sent 28 questionnaires in June 2020, and of those, 20 ultimately opted out or were dismissed from the case. (*Id.* ¶ 6.) In September 2020, FedEx sent questionnaires to 10 opt-ins, all of which were ultimately dismissed from the case. (*Id.* ¶ 7.) FedEx sent out another 49 questionnaires in December 2020, and 10 of those opt-ins were eventually dismissed. (*Id.* ¶ 8.) In March 2021, FedEx sent out another 15 questionnaires, four of which were ultimately dismissed. (*Id.* ¶ 9.) In total, FedEx sent 129 questionnaires, some of which went to opt-ins selected by LLR, 52 for which it never received a response. (*Id.* ¶ 10.)[3] 55 of those 129—42 percent of the discovery opt-ins—were dismissed with prejudice from the case. (*Roy* ECF Nos. 187, 193, 214, 221, 242, 260, 261, 310, 337.) FedEx never even received complete responses from a total of the 50 of <u>its selected</u> discovery opt-ins (receiving only 36), which the Court had ordered it was entitled to, despite it issuing dozens of questionnaire to alternates, by the time it had to move for decertification. (Scott Decl. ¶ 11.)

---

[3] Plaintiffs had sought discovery from FedEx for a separate 50 opt-ins than those FedEx had chosen and, as a result, agreed to provide questionnaire responses for those as well (*Roy*, ECF No. 221 at 18), resulting in FedEx ultimately being entitled to a total of 100 completed opt-in questionnaires.

Throughout the *Roy* case, and to the *Claiborne* court as well, Ms. Liss-Riordan repeatedly

described LLR's struggles with getting opt-ins to participate in discovery:

- To Judge Colville in a January 2021 status conference in *Claiborne*, regarding the *Roy* case: "So in that case where we have about 500 some odd opt-ins, the Court ordered this written discovery for 50. We have been going through this process of doing the discovery for 50. So we have used FedEx's questionnaire on the 50. I will say it's been very hard, we have been working very hard, our associates and our paralegals have been working very hard on responding to discovery even for 50, and it has been very difficult. Because it's just hard to get people who opted into a case who understood that somebody else was going to be prosecuting the case for them to actually engage in discovery." (*Claiborne*, Hr'g Tr. 11:12-22, Jan. 27, 2021, excerpts attached as Ex. B (emphasis added).)

- "So at some point we may need to get your guidance on what happens with people who have responded to discovery, written discovery, but, um, we can't get them pinned down to schedule dates. You know I expect that will happen, we'll keep following up with these two, but they haven't been responsive. But I don't know what we're going to be able to do if they just won't respond." (*Roy*, Hr'g Tr. 23:16-22, June 7, 2021, excerpts attached as Ex. C.)

- "Plaintiffs believed in good faith when the Parties proposed the briefing schedule for decertification that they would be able to obtain and schedule opt-in depositions quicker than what has occurred." (*Roy*, ECF No. 274 at 1.)

- To Judge Colville in *Claiborne*, when addressing the number of opt-ins that should be subject to the same limited questionnaire discovery used in *Roy*: "Inevitably a lot of people who were chosen to participate in discovery simply won't do it. A lot of people opted in. If they're told that they need to take further action in the case, a lot of them just won't do it." (*Claiborne*, Hr'g Tr. 6:4-7, Jan. 27, 2021.)

- To Judge Colville: "I mean the truth of it is is that when you have these cases, yes, a lot of people don't want to participate. It's hard to get them to participate." (*Claiborne*, Hr'g Tr. 17:25-18:2, Feb. 10, 2022, excerpts attached at Ex. D.)

By decertification in early 2024, FedEx had received only 60 "complete" questionnaire

responses[4] from the total 129 discovery questionnaires it had issued, almost half of which had

---

[4] The use of the word "complete" for these purposes simply means the person filled out the questionnaire and produced documents they said they had, if any; however, most said they didn't have any documents anymore and therefore produced little to nothing. (Scott Decl. ¶ 11.)

been Plaintiff-selected, and only 34 of those 60 produced any documents at all. (Scott Decl.

¶ 11.) Even where FedEx did receive responses, even partial ones, those responses took many

months to receive. (*Id.* ¶ 12.) There were also deficiencies with the two named plaintiffs'

discovery as well. Plaintiff Jordan Roy did not produce any pay documents despite the fact that

he filed suit shortly after her stopped working for his Service Provider. (*Id.* ¶ 16.) He testified in

his deposition that he did not keep relevant pay stubs and other documents because he "didn't

think i[t] was going to come to this point." (Roy Dep. 122:22-123:2, 123:19-124:1, excerpts

attached as Ex. E.) Justin Trumbull produced a limited number of pay stubs, despite also filing

suit shortly after he stopped working for his Service Provider. (Scott Decl. ¶ 16.)

Additionally, throughout *Roy*, the parties and the Court saw that even from the relatively

small sampling that participated in discovery, though they all had signed a form swearing under

penalty of perjury that they had driven light vehicles, worked overtime in those vehicles, and not

been paid for that overtime, that was not true for many. (*See, e.g.*, *Roy*, Hr'g Tr. 6:14-19, June 7,

2021 (Ms. Liss-Riordan stated, "a handful of [opt-ins] have withdrawn . . . people who, you

know for one reason or another, we've determined are not eligible or did not spend any

substantial amount of time driving a small truck"); *Roy*, ECF No. 360, Pls.' Unopposed Mot. to

Dismiss 32 Opt-In Pls. Based on FedEx's Data (admitting that an additional 32 opt-ins "are not

able to recover overtime pay because they did not drive vehicles under 10,001 pounds gross

weight for more than a *de minimis* amount of time during the relevant period"); *id.*, ECF No. 308

(same for five additional opt-ins).)

### B.    The Court Decertified the Collective

On March 29, 2024, the Court granted FedEx's motion to decertify the *Roy* collective,

holding that "in view of the disparities in the record, [FedEx] is entitled to defend Plaintiffs'

claims individually." (*Roy*, ECF No. 408 at 25, attached as Ex. F.) Following decertification, LLR asked for, and received over FedEx's objection to such a lengthy time period, a 120-day tolling period to allow the dismissed opt-ins to file their claims individually. (*See Roy*, Hr'g Tr. 5:21-7:7, Apr. 9, 2024, excerpts attached as Ex. G.) LLR represented that it planned to "reach[] out to opt-ins to let them know about the Court's ruling and find out who wants to continue to pursue their claims individually, and then [it] would refile those separately." (*Id.* at 5:1-6.)

In the *Claiborne* action, where LLR voluntarily decertified the case after this Court's decertification, LLR was granted the same 120-day tolling period per its request. (*Claiborne*, ECF No. 526.) There, LLR represented to the Court that it purportedly spent this time "work[ing] diligently to inform the *Claiborne* opt-in plaintiffs of the decertification order and of their right to pursue individual claims." (*Id.*, ECF No. 544.) LLR further represented there that it "intend[ed] to organize the complaints so that the plaintiffs in the first complaint are those who have already undergone discovery" and that "[t]he following complaints will have plaintiffs generally grouped and listed based on the state in which they worked." (*Id.*) FedEx understood that LLR planned to separate the Massachusetts opt-in complaints similarly. That is, LLR would have one complaint for opt-ins who participated in discovery in *Roy* in some way and one for those who did not participate in *Roy* discovery. It appears that the 38 *Doyle* Plaintiffs were all chosen as discovery opt-ins, either by FedEx or the Plaintiffs, in *Roy.* (Scott Decl. ¶ 13.)

## II.    THE *DOYLE* ACTION

On August 6, 2024, along with three other mass actions totaling over 12,000 Plaintiffs, LLR filed this mass action on behalf of 38 Plaintiffs. (ECF No. 1.) Given the low participation level of *Roy* and *Claiborne* discovery opt-ins, FedEx conducted some social media research to attempt to find how LLR had communicated with these opt-ins about what joining as Plaintiffs,

rather than opt-ins, would mean in terms of their obligations and participation. FedEx quickly realized that LLR had not conducted any meaningful investigation into the validity of the claims asserted in this case, nor did it appear that LLR had adequately informed opt-ins that they were becoming named Plaintiffs with obligations to participate fully in discovery, to preserve documents for litigation, or the risks associated with becoming a named Plaintiff (including being responsible for costs if they lose their case).

## ARGUMENT

In filing *Doyle*, LLR has not met its Rule 11 obligations. Rule 11 "prohibits filings made with any improper purpose, the offering of frivolous arguments, and the assertion of factual allegations without evidentiary support or the likely prospect of such support." *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F.3d 140, 142 (1st Cir. 2006) (internal quotation marks omitted). As the court in *In re Engle Cases* aptly recognized, the volume of claims does not change these obligations. 283 F. Supp. 3d at 1221. Yet LLR is doing just what *In re Engle Cases* warned against: attempting to overwhelm FedEx and the Court with a "tidal wave of lawsuits, and at the same time bear diminished responsibility for filing claims that lack factual support." *Id*.

That is, instead of conducting the required, reasonable inquiry to determine which, if any, of the Plaintiffs have viable individual claims to bring before filing, LLR filed untenable and unworkable mass actions on behalf of anyone who responded to a mass email requesting permission to "refile" their claim. This failure has resulted in individuals being included as Plaintiffs who do not have claims and who have already shown they will not participate in discovery as they are required to do. LLR cannot continue to treat these cases as putative collective actions after the Court decertified *Roy*. Decertification has consequences. It means that LLR now had to conduct a reasonable legal and factual inquiry into each individual Plaintiff's

claim <u>before</u> moving forward with new lawsuits to ensure that it included only valid claims brought by individuals willing and able to fully participate in the discovery process to prosecute them, and for LLR itself to ensure <u>it</u> could promptly and efficiently litigate these claims.

If FedEx is forced to respond to the amended complaint and defend this case as currently pled, particularly in light of LLR and its other cases representing over 12,000 Plaintiffs, the parties and the Court are headed for years of fruitless litigation and waste of resources. FedEx will have to seek full named-Plaintiff discovery from dozens of Plaintiffs who have already demonstrated their inability or unwillingness to fully participate in limited opt-in discovery in the collective context. The parties and the Court will also have to spend significant resources in attempting to winnow down claims that were not viable (in whole or in part) to begin with. And that's by design. Indeed, Ms. Liss-Riordan promised this when she told FedEx's counsel that if FedEx was not willing to negotiate a "global resolution," then the parties would "have fun together" litigating the cases for the "next 10 years or more." (Scott Decl. ¶¶ 25-26, 29.) But FedEx should not be required to fulfill LLR's basic Rule 11 requirements for it. Rather, the Court should dismiss the complaint and require LLR to conduct the reasonable investigations and communications it should have done before filing.

## I.    LLR HAS VIOLATED RULE 11(b)(1)

"By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . ." Fed. R. Civ. P. 11(b)(1). "Rule 11 is designed to discourage the filing of frivolous and unsupported claims by 'imposing a duty on counsel to investigate their clients' claims <u>before</u> making any filings and to

reassess them throughout the litigation.'" *Leavitt v. United Servs. Auto. Ass'n*, No. 4:23-CV-11341-IT, 2024 WL 218504, at *9 (D. Mass. Jan. 19, 2024) (emphasis added). Such investigation must include a "reasonable inquiry into the facts and the law." *Id.* LLR has not and cannot make such a showing, because it cannot even demonstrate that the 38 Plaintiffs are valid Plaintiffs or that LLR can ensure each Plaintiff will actively participate in this litigation.

### A.    There Is No Indication These Are Valid Plaintiffs

While it appears LLR sent out a mass email to the previous *Roy* and *Claiborne* opt-ins during the 120 days of tolling it requested, it does not appear that LLR communicated to its clients the significant differences between being an opt-in versus a named Plaintiff. This matters because "the fact that an individual might have been interested in participating as a passive class member in a case that might potentially be resolved on a classwide basis did not mean that he or she was legally authorized or willing to file an individual contested lawsuit." *In re Engle Cases*, 283 F. Supp. 3d at 1222 n.41 (cleaned up).

LLR's communications to its clients, some of which its clients posted online,[5] only informed the opt-ins of their right to pursue individual claims against FedEx and misleadingly suggested that LLR already made a determination regarding the merits of their claims. LLR did not explain that pursing these claims on an individual basis would mean these Plaintiffs would

---

[5] Other than the information posted publicly online, FedEx does not have any insight into other communications LLR may have had with its clients, if any, and it is not asking for such communications. If LLR claims to have had additional communications with those that ended up as Plaintiffs in this case that proves they were properly informed of, and accepted, their duties and obligations of acting as Plaintiffs, it should present them to the Court for in camera review. However, even if LLR has such communications, this does not resolve the separate bases for this motion, which is that LLR itself did not do any investigation into the validity of any of these Plaintiffs' claims and that LLR itself admittedly is unable to timely or properly prosecute Plaintiffs' claims.

have full discovery and other obligations they did not have previously. For example, in an email

sent on or about May 7, 2024 (attached as Ex. H (*see also* Scott Decl. ¶ 30)), LLR:

- Requested that individuals submit a retainer so that LLR can "CONTINUE REPRESENTING YOU TO RECOVER OVERTIME PAY <u>WE BELIEVE YOU ARE OWED</u>" (underlined emphasis added) and that the individual initially opted into the case where LLR was arguing that they "get paid overtime you <u>are</u> eligible for" (emphasis added).

- Stated that representing them on their overtime claim against FedEx and "re-fil[ing]" their individual claim "is no problem for us to do, and we expect to continue representing thousands of FedEx drivers around the country for whom we have been pursuing this claim." *Id.*

Another communication from LLR, attached as Ex. I (*see also* Scott Decl. ¶ 31), states

"[w]e have been pursuing your claim for several years but, under a recent court ruling, we need

your permission to refile your claim." That communication then linked to LLR's website, where

it requested information from the individual "[t]o see if you qualify." (Ex. J (*see also* Scott Decl.

¶ 32).) Other than contact information, the questions simply asked for "FedEx Terminal City"

and "FedEx Terminal State"—nothing about qualification to participate as a Service Provider

driver that drove light vehicles and were not paid overtime. (*See* Ex. J.) And, most notably,

despite the entire basis for pursuing FedEx instead of Plaintiffs' employing Service Providers on

the theory that FedEx employed them, for individuals to submit the form they had to check the

following:

Request for Legal Advice/Privilege and Confidentiality Agreement *

☐ I want legal advice about my potential claims against FEDEX. I am not an employee or agent of FEDEX. I will keep what I learn inside this site confidential.

(*Id.* (highlighting added).)

These communications show that once a person simply signed up with nothing more than

this basic information, and confirmation they are <u>not</u> an employee of FedEx, LLR would

automatically "refile" their claim, regardless of its merit and regardless of them having any

actual understanding of what they were signing on to do.[6] This was likely strategic. Ms. Liss-Riordan's prior statements to the Court and the *Claiborne* court show that she was aware that most opt-ins did not want to actively participate in a lawsuit. By conveniently leaving out any information about future discovery and other obligations, and suggesting merits determinations had already been made, LLR increased the number of respondents, which, helpfully for LLR, increases the costs of litigation for FedEx in an attempt to harass FedEx into settlement.[7]

This is consistent with LLR's consistent failure to properly vet the validity of claims and willingness of plaintiffs to fully participate even for those it has sought to represent in putative state- and nationwide classes. (*See Claiborne*, ECF Nos. 293, 294 (dismissing original named Plaintiff, A. Sullivan-Blake); *id.*, ECF No. 378 (dismissing putative Hawaii class representative named Plaintiff, D. Kauhane); *id.*, ECF Nos. 464, 465 (dismissing putative New Jersey class representative named Plaintiff, D. Forrester); *id.*, ECF No. 323, Pls.' Mem. in Opp'n to Def's Mot. for Summ. J. on All Claims Asserted by Pls.' D. Russell, K. Burton, and T. Deppiesse, at 1-2 (in response to FedEx's summary judgment motion based on plaintiffs Russell and Burton not having driven light vehicles, plaintiffs indicating they "are withdrawing their overtime claims").) That is sanctionable conduct. *See, e.g.*, *In re Engle Cases*, 767 F.3d 1082, 1088 n.4 (11th Cir.

---

[6] LLR itself has put all Plaintiffs' claims in a worse position. If a person does <u>not</u> believe FedEx was their employer, that is relevant to several joint employment factors, including who actually controlled their day-to-day work, discipline, who they reported to, and related information. At a minimum, it is impeachment material for every Plaintiff that checked that box.

[7] Specifically, before filing this suit, Ms. Liss-Riordan told FedEx's counsel, Ms. Scott, that LLR was planning to file "many thousands" of claims and that now would be a good time to discuss a "global resolution." (Scott Decl. ¶¶ 23-24.) Ms. Liss-Riordan stated that the parties could mediate based on "data" regarding these individuals, and when Ms. Scott asked if that included Plaintiffs obtaining and providing actual pay information for these individuals, Ms. Liss-Riordan did not answer the question. (*Id.* ¶ 26.) Ms. Liss-Riordan touted that if FedEx was not interested in a global resolution for these thousands of claims, the parties would "have fun together" litigating these cases "for the next 10 years or more." (*See id.* ¶¶ 24, 27.)

2014) ("[T]he lawyers in these cases have established a pattern of acting on behalf of 'clients' they have dubious authority to represent. As will become evident from the history of this mass action, plaintiffs' counsel have mostly managed their inventory of cases as they see fit, with scant contact with or input from the individuals they purport to represent.").

### B.    LLR Knows It Cannot Get Each Plaintiff to Participate in this Case As Plaintiffs Are Required to Do

It's beyond belief that 38 Plaintiffs, many of whom have already demonstrated their unwillingness to participate only as opt-ins in the *Roy* collective, will each fully participate in named Plaintiff discovery (as they must), including responding to written discovery and sitting for depositions. In *Roy*, LLR could marshal only barely half participation from 129 questionnaires issued to opt-ins, including those selected by LLR itself, over a period of five years. And those struggles occurred despite LLR's self-proclaimed diligence. But that didn't stop LLR from assuring the former opt-ins that refiling their claims here and litigating thousands of individual driver claims across multiple cases was "no problem for [it] to do." (*See* Ex. H.)

The 38 Plaintiffs in this action were all opt-ins chosen for discovery in *Roy*, either by FedEx or by LLR. As such, LLR is intimately familiar with their discovery deficiencies and its admitted struggles in getting these so-called Plaintiffs to participate in the limited discovery ordered of them there, where they all had been a part of *Roy* since 2019.

Nine of the 38 Plaintiffs in this action did not fully comply with their discovery obligations in *Roy*. Two Plaintiffs, Luke Scarbrough and Christopher Cantin, never responded to their discovery questionnaire. (Scott Decl. ¶ 13.) The Court ordered them to produce completed questionnaires within 60 days of its order entered on August 23, 2021, and they never did. (*Roy*, ECF No. 221.) While the Court did not dismiss their claims when they failed to respond, it held that Plaintiffs were not entitled to rely on information related to these Plaintiffs' employment in

decertification briefing. (*Id.* at 18.) It is hard to believe these two individuals signed on to be actual Plaintiffs here and, if they had, that they will now participate more than they were willing to do in *Roy* (i.e., nothing).

Seven other Plaintiffs did not fully comply with their limited discovery obligations in *Roy*. That is, they did not produce all of the documents they said they had in their possession up through the time FedEx filed its decertification motion on August 18, 2023, and many testified that they were never instructed to preserve relevant documents. As a few examples:

- Antonio Barros, who was deposed in *Roy*, produced only W-2s through 2021 and paystubs through 2022, even though he was a current driver through at least August 18, 2023. (Scott Decl. ¶ 14.) Moreover, Barros testified at his deposition that he had many documents in his possession that he had not produced, and that no one told him to keep copies of information related to the case. (Barros Dep. 41:9-42:20, 46:21-47:6, excerpts attached as Ex. L.)

- Diana Fowler produced pay stubs only through 2019, even though she drove through 2021. (Scott Decl. ¶ 15.)

- Paul Odierno testified that no one instructed him to preserve potentially relevant documents related to the case. (Odierno Dep. 128:22-24, excepts attached as Ex. M.) Odierno did not produce any documents at all. (Scott Decl. ¶ 17.)

Moreover, 21 of the 38 Plaintiffs here were <u>not</u> deposed in *Roy*. (Scott Decl. ¶ 20.) As LLR has admitted to this Court, even where opt-ins responded to discovery questionnaires, LLR still struggled to get them to sit for depositions. (*Roy*, Hr'g Tr. 23:16-22, June 7, 2021.)

If past is prologue, and there is no reason to believe that it isn't, LLR's ability to handle the discovery obligations here, in combination with three other cases asserting claims on behalf of over 12,000 individuals, is in serious doubt, especially because the number of lawyers for Plaintiffs is less than in *Roy* or *Claiborne*, with only LLR (a law firm of 13 attorneys) listed as

Plaintiffs' counsel across all four mass actions.[8] LLR's admitted inability, even with co-counsel, to fully litigate on behalf of hundreds of individuals in *Roy* and *Claiborne* in a timely or efficient manner means that LLR filed its new cases against FedEx, including this one, only to "harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" (*see* Fed. R. Civ. P. 11(b)(1)), as Ms. Liss-Riordan stated, in an attempt to reach some sort of "global resolution." FedEx and the Court should not be the ones burdened with going through the discovery process with each of these individuals to try to figure out which ones legitimately can and will participate as Plaintiffs.

Even as recently as October 25, 2024, when dealing with just the remaining 12 plaintiffs in *Claiborne*, Ms. Liss-Riordan attempted to blame LLR's grossly erroneous damages calculations it provided to FedEx for them on having to go through "a ridiculous amount of data" and that somehow this was FedEx's fault. (Scott Decl. ¶ 34, & Ex. K.) But this "ridiculous amount of data" was simply paystubs the plaintiffs had produced (none of whom produced complete sets), the plaintiffs' depositions, and the summary scanner and vehicle data LLR had requested from FedEx, for just 12 plaintiffs. (Scott Decl. ¶ 35.) When LLR is unable to put together basic damages disclosures and calculations for just 12 plaintiffs, it is implausible that LLR will be able to adequately litigate on behalf of dozens of Plaintiffs here.

The *In re Engle Cases*, 283 F. Supp. 3d at 1221, is instructive. There, following the decertification of a class action, a law firm was given one year to file claims on behalf of individual plaintiffs. *Id.* at 1185-87. The law firm filed 3,700 complaints in state and federal courts, despite the fact that it did not have the capacity to litigate on behalf of 3,700 people and

---

[8] Albeit all relatively small firms, *Roy* had two firms involved: LLR and Winebrake & Santillo, LLC. (*See, e.g.*, *Roy*, ECF No. 375 at 41.)

was not able to contact all of its "clients" before the filing deadline. *Id.* When it couldn't get in touch with the potential plaintiffs, it relied on previous opt-in forms from the collective as the basis for filing the complaints. *Id.* at 1187.

Over the next several years, the majority of the claims were "resolved through a painstakingly piecemeal culling process," involving court-ordered questionnaires, which yielded only an approximately 65% response rate, and numerous plaintiffs dismissed for frivolity. *Id.* at 1182-84, 1188, 1190, 1194 (noting that 118 cases were dismissed because they were filed in "clerical error," the law firm had filed over 500 cases on behalf of dead plaintiffs, 30 cases were dismissed because they were previously adjudicated, and 25 cases were dismissed because plaintiffs had opted-out of the previous class action). In the end, the court found that the law firm had filed and maintained at least 1,250 suits that were "frivolous from their inception." *Id.* at 1254. The court sanctioned the law firm over nine million dollars to recoup judicial and public resources. *Id.* at 1255.

FedEx is not asking the Court to sanction LLR in this fashion. But the "root of the problem" is the same here as it was in *Engle*. That is, when this case was filed, "the law firm that brought [it] didn't have the time or resources required to fully investigate all the complaints." *See In re Engle Cases*, 767 F.3d at 1087. Because of this, "problem after problem cropped up" and "[o]ver and over, plaintiffs' counsel explained that these problems were the result of the unique logistical difficulties involved in managing so many individual lawsuits." *Id.* But that cannot change the irrefutable fact that "a lawyer's responsibilities to the court are not diluted even by an ocean of claims." *Id.* In other words, the same rules apply whether there is one plaintiff or 38.

## II.    LLR HAS VIOLATED RULE 11(b)(2)-(3)

Rule 11 sanctions are appropriate where the claims presented are not based on a reasonable inquiry. *See e.g.*, *Leavitt*, 2024 WL 218504, at *11 (granting defendant's motion for Rule 11 sanctions because the factual contentions in plaintiff's complaint were "unsupported by evidence"); *In re Engle Cases,* 283 F. Supp. 3d at 1221 (rejecting counsel's argument that factual errors were inevitable given that he had only one year to file complaints on behalf of over 3,700 individuals). FedEx's investigation into these claims is far from complete, but it has already uncovered myriad problems with a significant number of Plaintiffs' claims.

All of these problems could have been avoided if LLR had just conducted the requisite inquiry or analysis of its clients' claims. Because LLR failed to do so, dismissing this case without prejudice is the appropriate sanction.

### A.    LLR Has Not Alleged Accurate Facts for Many of the Plaintiffs' Claims

Despite having access to documents produced in *Roy* demonstrating that some of the Plaintiffs were paid overtime by their Service Providers, that some did not work overtime for significant amounts of time, and that some Plaintiffs drove only heavy vehicles for significant amounts of time and for certain Service Providers (making them exempt from overtime), LLR proceeded with blanket allegations, claiming damages for all years driven. (*See generally* First Am. Compl., ECF No. 14.) LLR's possesses evidence showing that many of its allegations are baseless. As a few examples:

- LLR alleges that Sean Doyle drove from 2016 to 2021 without being paid overtime, but Doyle admitted, and his pay documents show, that he was paid overtime beginning in at least December 2020. (*Compare* ECF No. 14 ¶ 3 *with Roy*, ECF No. 350-15; Scott Decl. ¶ 21.)

- LLR alleges that Keith Eddington drove from 2017 to 2018 without being paid overtime, but documents produced in *Roy* demonstrate that he was paid overtime beginning in at least May 2018. (*Compare* ECF No. 14 ¶ 12 *with* Scott Decl.

17

¶ 22.) Additionally, Eddington's summary scanner and vehicle data shows that he drove only heavy vehicles for one of his Service Providers, AMP Transport Inc. in December 2017, and thus is not eligible for any overtime while working for that Service Provider (*See Roy*, ECF No. 350-16.)

- LLR alleges that Dana McDonald drove from 2015 to 2017 without being paid overtime, but McDonald's summary scanner and vehicle data shows that she drove only heavy vehicles for one of her Service Providers, M&M Logistics, Inc. from March to June 2015, and thus is not eligible for any overtime while working for that Service Provider. (*See Roy*, ECF No. 351-18.)

- LLR alleges that Antonio Teixeria Barros drove from 2017 to 2024 without being paid overtime, but Barros's summary scanner and vehicle data shows that he drove only heavy vehicles for one of his Service Providers, Becks Transportation Corp., for 69 weeks from 2018 to 2020, and thus is not eligible for any overtime while working for that Service Provider. (*See Roy*, ECF No. 349-22.)

In moving to compel FedEx's available scanner and vehicle data for all opt-ins, LLR argued that scanner data was "clearly . . . relevant to the issue of whether opt-in Plaintiffs worked overtime hours." (*See Roy*, ECF No. 256 at 7.) Yet, even though LLR indisputably has this information it deems "clearly relevant" readily available for all of the Plaintiffs in this case, it did not take the time to inquire into the most basic facts and then convey those facts in its pleading. Such cavalier conduct in failing to investigate and allege precisely when these Plaintiffs claim they were owed and not paid overtime is sanctionable. *See, e.g.*, *In re Engle Cases*, 283 F. Supp. 3d at 1218 (awarding Rule 11 sanctions where the plaintiffs' counsel's "approach to filing the complaints was to file-first-and-ask-questions-later by stating that his firm lacked 'the ability to contact 7,000 people in a year,' so instead they opted to file the complaints and then determine whether the cases were viable"); *Galanis v. Szulik*, 841 F. Supp. 2d 456, 462 (D. Mass. 2011) (issuing sanctions where plaintiff's counsel filed complaint, without any further

investigation, "despite the absence of evidence supporting plaintiff's material allegations and after receiving a letter from defendant's counsel contesting th[e] allegations").[9]

LLR also included a Plaintiff in both the original and amended complaint, Roberto Ayala-Robles, who is also named in the *Alleyne* complaint. (*Compare* ECF No. 14 ¶ 5 *with Alleyne*, ECF No. 21 ¶ 11.) Clearly, this Plaintiff cannot maintain the same claim against FedEx in two separate actions, and thus his claim in one of those complaints is legally and factually baseless. Moreover, in *Alleyne*, LLR alleges that Mr. Ayala-Robles drove from 2014 to 2024, while in *Doyle*, LLR alleges that Mr. Ayala-Robles drove from 2014 to 2016. (*See id.*) Neither of these appear to be correct—scanner data FedEx produced to LLR during discovery in *Roy* shows he drove only in 2015. (Scott Decl. ¶ 16.)[10]

### B.    LLR Has Not Requested Pay Documents from Plaintiffs' Employers

Some courts have held that in FLSA cases, a reasonable pre-suit factual inquiry includes requesting the plaintiff's pay documents from their employer and reviewing those documents to ensure the factual viability of their overtime claim. *See e.g.*, *Brown v. M/I Homes of Orlando, LLC*, No. 608-CV-528-ORL-28KRS, 2008 WL 5099695, at *2 (M.D. Fla. Nov. 26, 2008) ("In any case brought under the FLSA, a reasonable pre-filing inquiry necessarily would include a substantive inquiry with Plaintiff regarding her attendance at work, including absences for

---

[9] LLR will attempt to distinguish *In re Engle Cases* because LLR sent out a mass email communication this year asking for permission to "refile" opt-ins' claims and, presumably, obtained such permission in response to that communication before filing. However, as discussed at length throughout this brief, LLR did not explain to the previous opt-ins how their status was changing and what that meant for them and, even if it had, LLR was still under an obligation to conduct a reasonable inquiry into their claims and never did so.

[10] There was only one Roberto Ayala-Robles that opted into *Roy*. FedEx has confirmed there is not another driver with the same name that drove in the state of Massachusetts that could somehow explain this discrepancy. (Scott Decl. ¶ 23.)

vacations, medical leave, etc., and a request to Plaintiff's employer to inspect or copy Plaintiff's time sheets, payroll records, and other relevant records that an employer is required to maintain."); *Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 1836007, at *4-5 (S.D. Fla. Jan. 23, 2018), *r. & r. adopted*, No. 14-CV-23388, 2018 WL 1811907 (S.D. Fla. Mar. 16, 2018), *aff'd*, 810 F. App'x 743 (11th Cir. 2020), ("In this case, had Plaintiff's counsel looked at the Plaintiff's Earnings Statements, they would have seen that Defendant paid Plaintiff overtime wages."). But, for years, LLR has not sought this information.

In *Roy*, LLR refused to request pay documents from the opt-ins' Service Providers until it was ordered by the Court to do so (for six opt-ins), though it knew full well that is where opt-ins' pay documents reside. (*Roy*, ECF No. 221.) As the Court determined, because employees in Massachusetts have the right to obtain information related to their "rate of pay and other compensation" from their employers (the Service Providers), such pay information is within the control of the Plaintiffs. (*See id*. at 6.) Despite the Court's determination, LLR did not request pay information from any Service Providers apart from those that employed the six opt-ins for which the Court determined it must and, even for them, never issued subpoenas. (Scott Decl. ¶ 24.) Indeed, LLR never sought such information from the Service Provider that employed Named Plaintiffs Roy and Trumbull, either informally or through court process. (*Id*.) LLR clearly has not done so here either with respect to the 38 Plaintiffs, and thus has not conducted any factual inquiry into these Plaintiffs' claims apart from the online form Plaintiffs filled out with basic information that requested nothing about pay or vehicles driven. (*See* Ex. J.)

### III. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AND LLR SHOULD BE REQUIRED TO CONDUCT A REASONABLE INQUIRY INTO EACH PLAINTIFF'S CLAIMS BEFORE REFILING

FedEx anticipates LLR's response to this motion will be to offer to dismiss those individuals discussed herein. However, this does not resolve the overarching problems with the amended complaint itself and as applied to all Plaintiffs:

- (1) the complaint was filed to harass, cause unnecessary delay, and to needlessly increase the cost of litigation because

    - (a) LLR did nothing to ensure that any of these Plaintiffs are legitimate Plaintiffs with an understanding of their obligations to actively participate in the case now as named Plaintiffs (which we know from LLR's own communications with its clients); and

    - (b) LLR knows full well based on past experience in *Roy* and *Claiborne* that it cannot possibly properly litigate this case on behalf of 38 individuals (which we know from LLR's admissions to the courts in both cases), particularly when considered in light of its other cases against FedEx where LLR purports to represent over 12,000 other plaintiffs; and

- (2) LLR conducted no reasonable inquiry as to each Plaintiff to ensure their claims had legal and factual merit.

As a result, the only solution here to rectify these Rule 11 violations is to dismiss the amended complaint without prejudice to refile once, and if, LLR does what it has failed to do.

"One of the central purposes of Rule 11 is to protect parties and the court from wasteful, frivolous, and harassing lawsuits, and the rule provides for sanctions as a deterrent to such abusive conduct." *Azubuko v. MBNA Am. Bank*, 396 F. Supp. 2d 1, 7 (D. Mass. 2005) (citation omitted). Rule 11 sanctions can be monetary, non-monetary, or both. *See e.g.*, *Est. of Hennis v. Balicki*, No. CV 16-4216 (JBS-AMD), 2018 WL 2230543, at *2 (D.N.J. May 16, 2018). "Dismissal is a legitimate sanction under Rule 11, for serious misconduct when lesser sanctions would be ineffective or are unavailable." *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325-26 (D.C. Cir. 2000) (citations omitted) (affirming dismissal of five counterclaims under

Rule 11); *Del Giudice v. S.A.C. Cap. Mgmt., LLC*, No. CIV. A. 06-1413 SRC, 2009 WL 424368, at *11-12 (D.N.J. Feb. 19, 2009) (dismissing amended complaint without prejudice where lawsuit "was filed without even the pretense of a factual investigation by the filer"); *Miller v. Bridgeport Bd. of Educ.*, No. 3:12-CV-01287 JAM, 2014 WL 3738057, at *10 (D. Conn. July 30, 2014) (dismissing lawsuit with prejudice where lawyer fabricated allegations in complaint); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal as Rule 11 sanction where plaintiff used fabricated documents to support false allegations in complaint).

Here, any sanction other than dismissal would be ineffective. The Court granted LLR 120 days following the Court's decertification of the collective in *Roy* to file claims on behalf of individual plaintiffs. LLR was supposed to use that time to adequately discuss the validity of opt-ins' claims and their desire to continue to pursue them as Plaintiffs rather than part of a collective. LLR did not do so. LLR's Rule 11 obligations are not diminished because it decided to bring suit on behalf of 38 Plaintiffs (and over 12,000 in the three other cases), nor should LLR's burden be shifted to FedEx. *See In re Engle Cases*, 283 F. Supp. 3d at 1221.

Requiring FedEx to bear that burden for LLR by filing potentially dozens of motions to dismiss and seeking full discovery and depositions from dozens of Plaintiffs, many of whom will not respond or participate fully, would be prejudicial and a waste of the parties' and the Court's time and resources. According to Ms. Liss-Riordan, that process will "take the next 10 years."

Just as in the *In re Engle Cases*, LLR has brought an "ocean of claims" against FedEx, many of which are frivolous and all of which, at the very least, LLR has not reasonably investigated. *See* 767 F.3d at 1087. FedEx and the Court should not be required to conduct the same painstaking winnowing process conducted there, which, from what FedEx discussed above,

is certain to uncover the same result: LLR brought claims that were frivolous from the start and brought claims on behalf of Plaintiffs it knew would ultimately not actually participate and that LLR knew it could not itself handle. "It's not the Court's responsibility to engage in this winnowing process. The Court's responsibility is to take counsel to task when complaints are filed that are not authorized, for which there has been no affirmative act by the client to engage the lawyer to request that those services be expended on his or her behalf." *See In re Engle Cases*, 283 F. Supp. 3d at 1199.

## CONCLUSION

FedEx respectfully requests that its motion be granted in full.

Dated: December 2, 2024                  Respectfully submitted,

/s/ *Jessica G. Scott*
Jessica G. Scott (*pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
scott@wtotrial.com

Michael A. Siedband (BBO #676888)
Joseph P. McHugh (*pro hac vice*)
Shanicka L. Kennedy (*pro hac vice*)
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108
Telephone:  412.859.5917
Telephone:  412.859.5792
Facsimile:  412.859.5413
michael.siedband@fedex.com
joseph.mchugh@fedex.com
shanicka.kennedy@fedex.com

Attorneys for Federal Express Corporation,
successor by merger to FedEx Ground Package
System, Inc.

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on December 2, 2024, I electronically served the foregoing
**FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION
FOR RULE 11 SANCTIONS** via CM/ECF.

- **Shannon Liss-Riordan**
  sliss@llrlaw.com

- **Matthew Carrieri**
  mcarrieri@llrlaw.com

- **Jeremy Edward Abay**
  jabay@llrlaw.com

- **Michael A. Siedband**
  michael.siedband@fedex.com

*s/ Jessica G. Scott*